UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY HAMILTON,

        Petitioner,        CIVIL ACTION NO. 04-CV-74164-DT

vs.

                              DISTRICT JUDGE GERALD E. ROSEN

DOUGLAS C. VASBINDER,        MAGISTRATE JUDGE MONA K. MAJZOUB

        Respondent.
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:** This Court recommends that Petitioner's Petition for Writ of Habeas Corpus (Docket no. 1) be **DENIED**.

**II.**    **REPORT:**

    **A.**    **Procedural History**

A jury convicted Petitioner of assault with intent to do great bodily harm less than murder in violation of Mich. Comp. Laws § 750.84. (Docket no. 1, 35). The court sentenced him as an habitual offender to 12½ to 20 years of imprisonment. (*Id.*). Petitioner appealed to the Michigan Court of Appeals which affirmed his conviction but remanded for resentencing. The Michigan Supreme Court denied review. At resentencing, Petitioner was sentenced to 9½ to 20 years of imprisonment. The Michigan Court of Appeals affirmed that sentence. The Michigan Supreme Court denied leave to appeal. Petitioner then filed the instant federal habeas petition on October 26, 2004. (Docket no. 1). This action was dismissed without prejudice for failing to exhaust available state remedies. (Docket nos. 25, 26). Petitioner then filed a motion for relief from judgment in the

state trial court. Relief was denied pursuant to Mich. Ct. R. 6.508(D)(3). The Michigan Court of Appeals and the Michigan Supreme Court denied review under the same rule. Petitioner then filed a motion to reopen this action which was granted. (Docket no. 29).

Petitioner's petition has been fully briefed, and pretrial matters have been referred to the undersigned for decision. (*Id*.). This Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e). Petitioner's habeas petition is now ready for ruling.

Petitioner raises three grounds for relief in his petition. (Docket no. 1). He alleges first "abuse of discretion, created a stuctual [sic] defect in the trial process." Petitioner states as the supporting facts that the trial judge placed an improper condition on the introduction of evidence, that someone other than Defendant was the likely perpetrator of the offense. (*Id*.).

Petitioner's second ground for relief is that he was denied effective assistance of counsel. He contends that counsel failed to thoroughly present evidence that someone else was the perpetrator; that counsel failed to object to prosecutorial misconduct and the highly prejudicial, unresponsive testimony of a paid informant; and that counsel failed to object to inaccurate scoring variables at sentencing, and he was not given an opportunity to make corrections to these variables. (*Id*.). Petitioner's final ground for relief is that there was error in the sentencing procedure. Petitioner complains of inaccurate scoring variables and perjured testimony by the paid informant. Petitioner also states that there were "plenty of mitigating circumstances" to sentence him at the lower end of the sentencing guidelines. (*Id*.).

Respondent argues that Petitioner's first and third grounds for relief are non-cognizable in this proceeding because they allege only violations of state law. (Docket no. 6 at 8). Respondent also contends that Petitioner failed to show that he is entitled to relief on his claims of ineffective

assistance of counsel, with the exception of the claim that counsel failed to present evidence that Petitioner was not the perpetrator which Respondent argues is not exhausted. (*Id*. at 16-18). It was because of this non-exhaustion that Petitioner returned to the state court and filed a motion for relief from judgment.

Petitioner alleged in his motion for relief from judgment that he was denied effective assistance of counsel because counsel failed to thoroughly present evidence that someone else was the perpetrator of the offense and failed to object to highly prejudicial unresponsive testimony. (Docket no. 28, attached motion). That motion was denied because the state courts found that Petitioner failed to show actual prejudice to excuse his procedural default of the issues for not raising them on direct appeal. (*Id*.).

After Petitioner's federal habeas case was reopened, he filed a supplemental brief. (Docket no. 31). In this brief, Petitioner argues that he seeks to prove his actual innocence of the assault charge. (*Id*. at 2). He also argues that counsel failed to properly impeach his cellmate's testimony. (*Id*.). Petitioner also contends that the trial court erred in its evidentiary decisions regarding the victim's statements. (*Id*.). Petitioner further claims that the prosecutor misstated material facts in his summation and reiterates previously asserted errors of trial counsel. (*Id*. at 3-5).

Respondent argues that the state courts properly applied state court procedural default rules in finding that relief is barred on all claims raised in Petitioner's motion for relief from judgment. (Docket no. 35). Respondent also argues that actual innocence is not a basis upon which habeas relief may be granted. (*Id*.).

### B.  Factual Background

The Court of Appeals of Michigan summarized the evidence against Petitioner as follows:

Defendant was charged with assaulting his girlfriend in her apartment that she had shared with defendant. The victim was brutally beaten on or about February 28, 2000, and she sustained multiple trauma, including a closed head injury with multiple intracranial contusions and a large subdural hematoma. The victim required brain surgery, and she initially was not expected to live; however, after a lengthy hospital stay she recovered. The victim's injuries have left her unable to live independently. During the course of the victim's medical treatment, the treating doctor learned that the victim was an IV drug user and a heavy drinker. Defendant did not challenge the claim that the victim was beaten and suffered serious injuries, but defendant denied being the perpetrator.

At the first preliminary examination, the case was dismissed by the district court on the basis that there was a lack of probable cause that defendant was the perpetrator. Shortly thereafter, the prosecutor reinstated the charges against defendant. At the second preliminary examination, defendant was bound over for trial after the prosecutor presented new evidence of defendant's guilt. The new evidence came in the form of testimony from defendant's cellmate, who testified that defendant admitted assaulting the victim. At the preliminary examination, the cellmate admitted to drug use and to having an extensive criminal history.

Defendant claimed he discovered the victim's near lifeless body after letting himself into her apartment with his keys. Defendant asserted to an officer that he used to live at the apartment but had recently moved out because he was having frequent arguments with the victim. Defendant stated that they remained friends after he moved out, and that he would often stop at the apartment to give her cigarettes and pick up his mail. After defendant called 911, he allowed a police officer into the apartment, which was in disarray and, according to the officer, it appeared as though a fight had taken place. To enter the victim's apartment, it was necessary to go through two secured doors and one unsecured door. There were no signs of forced entry.

Paramedics found the victim on the bedroom floor with a dresser on her head, and she was unconscious but breathing. The victim had bruises on her arms, legs, and face, and she was dehydrated. Paramedics suspected that the injuries had been inflicted one or two days earlier. Defendant claimed that he and the victim had not fought on the day of the crime, and defendant was unaware of any individuals who would have reason to assault the victim.

The officer who responded to defendant's 911 call testified that defendant did not have any visible bruises or blood, nor did he appear to have been in a fight. According to the officer, defendant was cooperative, and defendant explained that he had gone to the victim's apartment to give her cigarettes and pick up his mail when he discovered her body.

A neighbor in the apartment building testified that on the day the victim was found, or possibly the day before, she heard the victim arguing with a male. The neighbor testified that the male voice was one she had heard arguing with the victim in the past, but she could not say definitively that the voice was defendant's. The neighbor did not see defendant in the apartment building on the day the victim was found or the day before. An acquaintance of the victim and defendant testified that defendant had moved out of the building but continued to visit the victim, and that he had never seen the victim with any other male besides defendant.

Defendant sought to present the testimony of a friend of the victim who was supposedly prepared to testify that the victim had contacted her around the time of the crime, and the victim stated that she felt threatened by a male that she had met in a bar located in the apartment complex. The trial court ruled that defendant could present the evidence, but the prosecutor could then pursue questioning of the victim regarding her fear of defendant around the time of the assault. Defendant declined to pursue the questioning of the victim's friend regarding the matter according to defendant's appellate brief. The victim's friend was assisting the victim in alcohol abuse rehabilitation, but according to the friend, the victim was still abusing alcohol at the time of the offense. The friend did testify that the victim had once felt threatened by a woman who told the victim that she would have her boyfriend beat her up because the victim had touched her car. The friend also testified that the victim had shown her an unsigned letter threatening the victim. The friend did acknowledge that she was aware of problems between defendant and the victim.

The victim was able to testify, and she stated that her and defendant had been friends and lovers for about four years. The victim further testified that defendant had lived with her and had keys, and that three keys were needed to get through various doors before entry into the apartment unit. The victim stated that after she awoke in the hospital, her first thought was wondering why defendant assaulted her. However, she had no recollection of the assault and

how she was injured, but the victim did recall her last memory was defendant coming into the apartment. The victim testified that she had no other boyfriends and no enemies. The victim denied meeting a man in the apartment bar and bringing him to her apartment. The victim testified that she and defendant were still a couple at the time of the assault, and that defendant would stop at her apartment on almost a daily basis, bringing her a newspaper and cigarettes. She testified that the couple frequently argued about defendant's work and his personal life. The victim asserted that defendant was a terrible liar, and that she wondered whether he was seeing another woman.

The victim also testified that she did not recall arguing with defendant on the day of the assault. The victim, who admitted being a problem drinker earlier in her life, stated that she never drank at the apartment bar, and she had no recollection of contacting her friend on the day of the assault to talk about being afraid of anyone.

An employee at the bar testified that the victim came by often for coffee, but she did not recall the victim being at the bar around the time of the offense. Another bar employee testified that the victim would, at times, come to the bar to drink, and on occasion she was already drunk when she arrived at the bar.

Defendant's cellmate testified that defendant stated that he had beaten up his girlfriend when he was high on drugs. A detective had approached the cellmate to inquire about any statements made by defendant. The cellmate testified that he did not ask for anything, nor was he promised anything, for his testimony. However, the cellmate admitted that he expected some consideration, and that the detective who had approached him sent a letter to the cellmate's sentencing judge and also met with the judge and the cellmate's attorney, and he was sentenced to a one-year minimum as opposed to the two-year minimum as recommended by probation officials. The cellmate testified that the detective stated that he would assist him after the cellmate had already stated that defendant confessed to the crime.

The detective who approached the cellmate testified that he was the live-in manager of the apartment complex where the crime occurred, and he knew both defendant and the victim. The detective testified that after the district court initially dismissed the action, the prosecutor suggested that he talk to defendant's cellmates. The detective also testified that he interviewed the victim at the hospital on March 13, 2000, and she shook her head indicating that defendant

> had not assaulted her. The victim asserts no recollection of the interview. On March 29, 2000, the victim physically indicated to the detective that defendant had assaulted her.

(Docket no. 18 at 1-3) (footnote omitted).

### C.   Standard of Review

Because Petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Among other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### D.   Habeas Petition Ground One–Trial Judge Evidentiary Ruling

The first ground for relief in Petitioner's petition is that the trial judge erred by making an evidentiary ruling concerning the testimony of the victim's friend. (Docket no. 1 at 4). The ruling was that the testimony (that the victim said she felt threatened by a male she met in the bar at her apartment building) could be introduced, but only if the prosecutor was then allowed to introduce

evidence that the victim was generally fearful of Petitioner around the time of the assault. (Docket no. 18 at 4). The Michigan Court of Appeals found no abuse of discretion in the trial court's ruling. (*Id.*).

Respondent contends that habeas relief is not available on this claim because it is an alleged error of state evidentiary law. (Docket no. 6 at 9). It is well established that state court rulings on the admission or exclusion of evidence may not be challenged in a federal habeas proceeding unless they infringe upon specific constitutional rights or are so prejudicial that they render the trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner has not shown that this alleged erroneous evidentiary ruling violated any of his constitutional rights or was so prejudicial as to render his trial fundamentally unfair. *See* docket no. 18 at 4. Accordingly, Petitioner's first ground for relief lacks merit.

### E. Habeas Petition Ground Three–Sentencing Error

Petitioner claims in his third ground for relief that there was an error in his sentencing procedure. (Docket no. 1 at 5). He asserts that the prosecutor argued evidence not in the record to support inaccurate sentencing variables, used perjured testimony of his cellmate, and that there were mitigating circumstances to sentence him at the low end of the sentencing guidelines. (*Id.*).

The Michigan Court of Appeals found that relief was warranted on Petitioner's original sentence because the factors considered by the trial court to sentence above the guidelines were already accounted for in the sentencing variables. (Docket no. 18 at 6-7). On remand, Petitioner was resentenced within the guideline range. (Docket no. 20 at 1). In his appeal of that sentence Petitioner challenged again the scoring of his guideline range. (*Id.* at 2). The Court of Appeals found that even if his challenges were credited they would not reduce Petitioner's total offense

variable and prior record variable scores.  (*Id*.).

Respondent argues that Petitioner's claim that he should have been sentenced at the low end of his guideline range is noncognizable.  (Docket no. 6 at 10).  Federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature. *Hutto v. Davis*, 454 U.S. 370, 373-74 (1982).  Petitioner has not shown that his sentence violates his constitutional rights.  *See Harmelin v. Michigan*, 501 U.S. 957 (1991).  This claim should be rejected.

In his petition Petitioner also alleges that the prosecutor argued evidence that was not in the record and used perjured testimony to support his inaccurate sentence.  (Docket no. 1 at 5).  Because his sentence was within the guideline range, and based upon the above discussion, these claims also fail to state a constitutional violation.  Moreover, Petitioner cites no evidence to show that the challenged testimony was perjurious.  Petitioner's third ground for relief should be dismissed.

### F. Habeas Petition Ground Two–Ineffective Assistance of Counsel

Petitioner makes several claims of ineffective assistance of counsel in his habeas petition. (Docket no. 1 at 4).  The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish ineffective assistance of counsel, Petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id.* at 687.  These two components are mixed questions of law and fact.  *Id*. at 698.  Further "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If

"it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citations omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry is "whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Petitioner claims first that counsel failed to thoroughly present evidence that someone else was likely the perpetrator of the offense. (*Id.*). This is the claim that Respondent argued, and this Court found, was not exhausted. Petitioner has since exhausted the claim by raising it in his motion for relief from judgment. The Michigan state courts found that he had procedurally defaulted the claim by not raising it earlier. Those courts also found that Petitioner had not shown that actual prejudice resulted from the alleged error. (Docket no. 28, attached Opinion and Order). Therefore, Petitioner was not entitled to relief. (*Id.*).

Respondent contends that relief is barred on this claim because of Petitioner's state court procedural default. (Docket no. 35 at 10). Petitioner conceded in his motion for relief from judgment that he failed to raise this claim on direct appeal. (Docket no. 28, attached Application for Leave at 3). The Sixth Circuit has held that Mich. Ct. R. 6.508(D)(3) is a valid procedural bar

for habeas purposes. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002). Therefore, a habeas petitioner's claims are procedurally defaulted where the Michigan Supreme Court expressly relies upon Mich. Ct. R. 6.508(D) in denying an application for leave to appeal, as in this case. (*Id.*). Habeas review of a defaulted claim is precluded unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The default may also be excused if the petitioner shows that failure to review the claim would result in a fundamental miscarriage of justice or shows his actual innocence. *Strickler v. Greene*, 527 U.S. 263 (1999); *Schlup v. Delo*, 513 U.S. 298, 321 (1995) (miscarriage of justice exception is rare to be used only in exceptional cases and is tied exception to the petitioner's innocence).

Petitioner fails to argue in his federal petition or supplemental brief that his procedural default should be excused. (Docket nos. 1, 31). He argued in state court that he had shown cause and prejudice to excuse his default. (Docket no. 28, attached Application for Leave). The state court rejected that argument. Likewise, at this stage of his case Petitioner has again failed to show cause or prejudice to excuse his default. The state court relied upon a lack of a showing of actual prejudice. A habeas petitioner shows actual prejudice by establishing that there is a reasonable probability that the verdict would have been different but for the alleged error. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Petitioner fails to show that the state court finding is deficient under either prong of section 2254(d). The evidence that Petitioner believes should have been presented simply is not sufficiently probative to support a finding that had it been presented there is a reasonable probability of a

-11-

different verdict. Moreover, as the Michigan Court of Appeals found, the evidence that the victim was fearful of another man around the time of the attack was at least alluded to in front of the jury. (Docket no. 18 at 4). Petitioner has also failed to show that his procedural default may be excused based on a miscarriage of justice or actual innocence basis. Relief therefore is barred on Petitioner's first claim of ineffective assistance of counsel.

Petitioner's second claim of ineffective assistance of counsel is that counsel failed to object to prosecutorial misconduct. (Docket no. 1 at 4). Petitioner failed to support this allegation with any facts. (*Id.*). Respondent argued that relief should be denied because it could not respond to such a vague allegation. (Docket no. 6 at 14). In a later brief Petitioner again mentioned that the prosecutor made material misstatements of fact in his summation. (Docket no. 31 at 3). However, Petitioner does not identify these alleged misstatements. Petitioner has therefore failed to show that counsel performed deficiently by not objecting and that he was prejudiced as a result. This claim should be dismissed.

Petitioner's next claim of ineffective assistance of counsel is that counsel failed to object to the testimony of the "paid informant," an apparent reference to his cellmate. (Docket no. 1 at 4). Petitioner may also intend this claim to include counsel's alleged deficient conduct in failing to request a jury instruction on the cellmate's credibility. The Michigan Court of Appeals found that trial counsel did in fact question the cellmate as to his drug use and forced the cellmate to admit that he sold drugs, that he had juvenile convictions, that he went to prison for possession with intent to deliver cocaine, that he had other convictions for larceny, fraud, and robbery, and that he received consideration for his testimony. (Docket no. 18 at 5). Petitioner does not challenge these findings. Due to this aggressive questioning, the Court of Appeals found that Petitioner could not show that

-12-

counsel performed unreasonably or that Petitioner was prejudiced by counsel's questioning of the cellmate. Petitioner fails to show that the Court of Appeals erred under section 2254(d) on this issue.

The Court of Appeals also found that under state law an "addict-informer instruction" to the jury was not proper under the facts of Petitioner's case because there was no showing that the cellmate was using drugs at the time of the jailhouse confession. (*Id*.). Moreover, that court also noted that the trial court instructed the jury generally on how bias, prejudice, and personal interest may influence a witness's testimony. (*Id*.). This apprised the jury of the need to question the credibility of the cellmate. Petitioner has failed to show that these conclusions by the state court are in violation of either prong of section 2254(d). This claim should therefore also be dismissed.

The final claims of ineffective assistance of counsel concern Petitioner's sentencing. (Docket no. 1 at 4). He alleges that counsel failed to object to inaccurate scoring variables and that he was not given an opportunity to make corrections to his presentence report. (*Id*.). The Michigan Court of Appeals found that even if Petitioner's "corrections" were made they would not change his final scoring variables. (Docket no. 20-2 at 2-3). Petitioner has not shown that this conclusion is erroneous in any way. Accordingly, Petitioner has failed to show that he is entitled to relief under section 2254(d) on this issue.

### G.    Actual Innocence

In his supplemental brief, Petitioner seeks to assert his "actual innocence" of the charge against him. The Supreme Court has not recognized a free-standing claim of actual innocence in habeas corpus apart from death cases. *See House v. Bell*, 547 U.S. 518 (2006); *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Petitioner has also failed to present a threshold showing of facts for such

a hypothetical right, the required showing for which would be "extraordinarily high." *House*, 547 U.S. at 520. This claim does not therefore merit habeas relief.

### III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response

proportionate raised in the objections, in the same order and labeled as "Response to Objection #1,"

"Response to Objection #2," etc.

Dated: March 04, 2009                s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

     I hereby certify that a copy of this Report and Recommendation was served upon Timothy Hamilton and Counsel of Record on this date.

Dated: March 04, 2009                s/ Lisa C. Bartlett
                                     Courtroom Deputy